BROWN ET AL. *v.* SOUTHERN R. R. CO. IN MISSISSIPPI.

[60 South. 326.]

RAILROADS.    *Crossings.    Signals.    Speed.    Negligence.*

.  In a suit against a railroad for killing a person at a public crossing in an incorporated town, where it was in evidence that the train which killed the person was running at more than six miles an hour and neither blew the whistle of the engine nor rung the bell; whether the railroad's negligence was the proximate cause of the injury was a question for the jury and a peremptory instruction for the defendant was reversible error.

APPEAL from the circuit court of Montgomery county. HON. G. A. McLEAN, Judge.

Suit by J. M. Brown and others against the Southern Railway Company in Mississippi. From a judgment for . defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Dunn & Thompson*, for appellants.

The deceased, a woman sixty-two years old, approached the railroad from the south on foot, traveling along the street of the village of Stewart, the most frequented street and principal thoroughfare of the village. At the same time appellee's passenger train going west, which arrives at Stewart between nine and ten o'clock in the morning was rapidly approaching the crossing, the approach of which, so far as can be judged from the testimony in the case, being unknown to the unfortunate old lady.

Let it be borne in mind that she could be seen up the track from the east at least three hundred yards before she got upon the dump or embankment and that after getting upon the same, which was about sixty feet wide, the railroad track being about the center, she could have been seen from the east at least half a mile.

As she about reached the north rail of the track she was struck by the locomotive and her body thrown forty-five feet from the track.

The testimony further shows (from the statement of eyewitnesses) that at the time of the injury the train was running at a high rate of speed—much higher than it usually ran along there, some of the witnesses putting the speed as high as twenty-five miles an hour. And the testimony further shows that the engineer gave no signal or warning of any kind whatever, as required by law, of his train's approach of the crossing. No bell was rung, no whistle sounded. The train approached the crossing in utter disregard of law, and running through an incorporated village at a rate of speed prohibited by law, having entered the corporate limits a half mile east of the crossing.

That the train was moving at a high rate of speed is evidenced by the fact that the old lady's body was thrown a great distance from the track—the distance of forty-five feet.

We submit that the facts show that this train was not only negligently run, but was operated in utter disregard of the life, limbs, safety and rights of every man, woman and child who might be approaching its tracks at that time along said street as they had the right to do.   On these facts the trial judge took the case from the jury. We submit that on the facts of the case there was a question for the jury.   We thnki it no answer to say that the action of his honor is sustainable on the ground of contributory negligence on the part of the deceased.   Within the Act of the legislature of 1910, chapter 135, providing that all questions of negligence and contributory negligence shall be for the jury, the court erred.   It should have submitted the question of the *causa causans* of the injury to the jury.   See *Natchez & S. R. Co.* v. *Crawford,* 55 So. 596.   Also the *Fuller case* reported in 57 So. ——— recently decided by this court.

We submit that the judgment should be reversed.

*Catchings & Catchings,* for appellant.

Appellants relied upon the case of *Fuller* v. *I. C. R. R. Co.,* decided by this court, December 18, 1911.   We will make some use of what was said *arguendo* by the court in that case, but for the present it is sufficient to say that the case at bar does not come within the purview of the case, by the express declaration of the court itself in the concluding part of its opinion.   The case then before the court was that of a man attempting to drive across a railway track in a wagon.   The court expressly distinguished that case from that of a pedestrian who is injured by a railway saying:

"It must be observed that this is not the case of a pedestrian who approaches or who is on the track.   In such cases the engineer has the right ordinarily to act upon the assumption that the party will get out of danger. Mr. Fuller was in a wagon, and the engineer could have

seen that he was going to cross the track, and could only with difficulty extricate himself from his perilous position."

The distinction is obvious, and has been recognized by this court in many cases. The reason for the distinction is that the cases are very rare in which a pedestrian could not by a very simple effort remove himself from all danger of being struck by an approaching or passing train. In the case of one attempting to cross with the team and wagon we have different circumstances entirely. It is necessarily difficult in most cases for one attempting to cross with a team to get out of the way unless he has considerable time within which to do so. On the other hand, as the track of a railroad is only about five feet wide, a person walking, by one or two steps can remove himself from the track and so from danger. As far back as *Strong* v. *A. & N. R. Co.*, 3 So. 465, it was held that where a woman came upon the track of a railroad company and did not look to see if it was clear, but continued to walk along the track for some distance, arriving at a trestle about one hundred feet long, started to cross it, and after she had proceeded some distance, saw an engine, when she began to run, and was struck just as she got across the trestle, she was guilty of such gross negligence and of such flagrant disregard of her personal safety that she could not recover, although the train which injured her was passing through a village at a greater rate of speed than six miles an hour. The court said, however, that notwithstanding her gross negligence and her flagrant disregard of her personal safety, if the engineer or employee in charge of the locomotive saw her on the trestle where she could not readily leave the track with safety, they were bound to stop the locomotive, or to do all they could to stop it, to avoid the injury. The court then added that there was no evidence in the record which showed that the engineer of the company saw the woman in her perilous position on the trestle, or from which it could be fairly inferred that she was seen in that perilous

position before she was struck, and it was said that under these circumstances the court properly instructed the jury to find for the railway company.

In the case of *Mobile & Ohio R. Co.* v, *Stroud*, 64 Miss. 792, this court said that a man who voluntarily gets on a railroad track sixty feet in front of a train moving towards him at a greater rate of speed than six miles an hour, at a point where there is nothing to obstruct the view or prevent him from seeing the train or leaving the track after he is on it, must take the consequences of his own negligence and folly.

Applying this rule to the case at bar, we say that even if the employees of the appellee saw Mrs. Brown on the dump, when the train was three hundred yards away, saw her walking towards the track, they were not bound to stop the train. They had the right to assume that although she was walking towards the track she would not walk upon the track directly in front of the train. They had the right to assume that as they saw her for three hundred yards she saw the train for three hundred yards, and that she would exercise the common instinct of self-preservation and not go on the track where the train could strike her. If they saw her on the dump before she reached the track, certainly there was nothing to indicate to them that she was in peril. She was under no obligation, in the pursuit of her self-preservation, to do anything except to refrain from going on the track. Seeing her, therefore, on the dump and approaching the track, was not seeing her in a perilous position.

In the case of *Moorhead* v. *Railroad Co.*, 84 Miss. 123, this court held that an engineer seeing a person on the track is charged with no duty other than the exercise of ordinary care. The court referred with approval to what it had said in the case of *Christian* v. *I. C. R. R. Co.*, 71 Miss. 237, to the effect that if the engineer saw a person on the track and it was apparent, or ought to have been apparent, to the engineer that the position occupied by

such person was one of peril, and one from which he could not by reasonable action extricate himself, or that the person was unaware of his position of peril, then it was the duty of the engineer to exercise reasonable care to prevent injury. In the case then before it the court said that the appellant, Moorhead, was not apparently in a place of peril. It said there was no *cul de sac.* It said that he was walking on a level track, where a single step to either side would have removed him from all danger, as it did his brother who was walking with him, and the engineer had no reason to believe that he was in a place of danger.

And in this connection we invite attention to the fact that the engineer did make an effort to stop the train. This is shown by the testimony of Mr. Staples, a passenger on the train. He distinctly testified that the train had slackened its speed as it came into Stewart, and that he noticed that the train stopped suddenly and went to the door to see the cause. It is also in evidence that the train stopped before it had entirely passed the crossing and that only the cowcatcher of the engine had reached a point opposite the passenger depot, which was seventy-five or one hundred yards from the crossing. It is perfectly evident, therefore, that as soon as the engineer discovered that the woman was recklessly exposing herself by attempting to cross the track in front of his train, he brought it to a very sudden stop. This was done so suddenly as to attract the attention of Mr. Staples, the passenger.

In the case of *St. Louis & San Francisco R. R. Co. v. Ruff,* 95 Miss. 165, Ruff was injured within the corporate limits of a village by a train running at a rate of speed somewhere between twenty and forty miles an hour, which speed was not slackened as the train approached Ruff. It is said:

"On the testimony in this record we think it is clear that a peremptory instruction should have been given for

the defendant railroad company.    The result of the testimony makes it plain that the unfortunate plaintiff did not look out for the train, but that he simply looked up when he saw the light from the headlight on the track. He was walking on the ends of the cross ties and had nothing on earth to do except to step off and be safe. Two, men had just above where he was injured, stepped off in safety.    The track was straight for eight miles. The train had whistled for Plantersville, and two or three times afterwards.    The case is plainly one of contributory negligence, producing the injury as its proximate cause. It is just one of those rare cases of negligence which a court ought to take from the jury."

Counsel for the appellants also refer to the case of *Natchez & S. R. Co.* v. *Crawford*, 55 So. 596.    This is a case in which this court maintained the constitutionality of our comparative negligence statute passed in 1910. Neither that statute, nor what was said by this court in the case cited, has any controlling effect, so far as the controversy now before this court is concerned.    The statute merely provides that in actions for injuries resulting in death, "the fact that the person injured may have been guilty of contributory negligence shall not bar recovery, but damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured."    It further provides that all questions of negligence and contributory negligence shall be for the jury to determine.

In discussing this statute, this court in the case of *Natchez & S. R. Co.* v. *Crawford*, above cited, expressly said:

"If the testimony of the plaintiff falls short of tending to establish negligence on the part of the defendant, there is no question of negligence for the jury to determine and the court may direct a verdict for the defendant."

So, we say that, taking the statute not only according to its terms, but according to the interpretation which

has been placed upon it by this court, it can have no application unless the court is prepared to say that the testimony in this case tends to establish negligence on the part of the appellee. What that negligence consists of is most certainly not disclosed by the testimony.

In the case of *Fuller* v. *I. C. R. Co.*, 56 So. 787, upon which counsel for appellants rely, this court expressly holds that there can be no liability except where the alleged negligence is the proximate cause of the injury. It quoted with approval the case of *Bogan* v. *C. C. R. Co.* 55 L. R. A. 419, in which it was said that the doctrine of contributory negligence finds no place "unless and until it has been independently determined that there has been some breach of duty on the defendant's part intervening between the antecedent negligence of the plaintiff, or deceased, to the accident." It is perfectly apparent, from the testimony, that there could not, in the nature of things, have been a breach of duty on the part of the appellle intervening between the negligence of the decedent in going upon the track, and the accident.

COOK, J., delivered the opinion of the court.

This is an action for the alleged negligent killing of Mrs. Brown. Upon the conclusion of the evidence for plaintiffs below, the court, at the request of the defendant railway company, excluded the evidence and directed the jury to return a verdict for defendant.

Mrs. Brown was killed by the westbound passenger train of defendant at a public street crossing in the town of Stewart. The evidence tended to show that the train, when it struck deceased, was running at a rate of speed much greater than six miles per hour. It also appears that the signals for the railroad crossing were not sounded. If the witnesses told the truth defendant's employees ignored two of the statutes of the state, which may or may not have been the proximate cause of the tragedy.

The jury may have reasonably concluded that, had either of the statutes been complied with, the accident would not have occurred.  If a railroad chooses to take chances by running its trains through incorporated towns at a greater rate of speed than six miles per hour, it must assume the hazard and pay the penalty for its deliberate wrongdoing.

If the whistle be not blown, or the bell rung, at least three hundred yards from a road, or street crossings, and the bell kept ringing, or the whistle kept blowing, until the engine crosses the highway or street, the plain mandate of the law has been ignored.  The company has violated the rules and regulations adopted by the state for the protection of the public.  It goes without saying that a strict observance of the rules would save many lives, much property, and would redound to the financial interests of the railroads.  It is for the jury to say what was the proximate cause of this deplorable death, and it is not within the power of the trial court to relieve the jury of this responsibility.

It is said that deceased flagrantly disregarded her own safety, and in the light of the evidence it may be added that the railroad flagrantly disregarded the law of the state; and so it is "honors are easy," and the jury may be called upon to make application of our recently adopted comparative negligence statute.

*Reversed and remanded.*